**Gaulter CAMARA, Petitioner,**

**v.**

**David NOLAN, Superintendent, MCI Cedar Junction, Respondent.**

**Civil Action No. 06-11568-WGY.**

United States District Court,
D. Massachusetts.

Oct. 16, 2008.

Gaulter Camara, South Walpole, MA, pro se.

Jonathan M. Ofilos, Office of the Attorney General, Boston, MA, for Respondent.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

## I. INTRODUCTION

Gaulter Camara ("Camara"), acting pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Camara's petition raises two grounds: (1) the trial judge's instructions on hostage taking omitted essential elements of the crime; and (2) exclusion of the evidence of alleged animosity between Camara and his co-venturer, which Camara argues undercut the joint venture theory of hostage taking, prevented him from presenting a complete defense.

### A. Procedural Posture

On May 10, 2001, a Bristol County Grand Jury indicted Camara for hostage taking while a prisoner in a penal institution in violation of Massachusetts General Laws chapter 127 section 38A, and for other crimes. On November 14, 2002 at the trial of Camara and four co-defendants (Randall Spearin, August Gomes, Melvin Collins and Jason Glover) the jury returned guilty verdicts against Camara on hostage taking and other charges. The Court imposed on Camara a sentence upon the conviction for hostage taking, and Camara was incarcerated. See Respondent's Opposition to Petitioner's Memorandum in Support of Petition for Writ of Habeas Corpus at 2.("Resp. opp.") [Doc. 22].

On November 25, 2002, Camara appealed. He raised four issues, two of which are relevant to the instant petition: (1) whether the judge erred in excluding exculpatory evidence indicating animosity between Camara and the individual who acted as a principal in the hostage taking; and (2) whether the judge's instruction on hostage taking created a substantial risk of a miscarriage of justice by omitting essential elements. The Massachusetts Supreme Judicial Court transferred the appeal, *sua sponte.* The Supreme Judicial Court affirmed Camara's conviction for hostage taking but reversed Camara's other convictions and set aside the jury verdicts on those charges. *Id.* at 3–4.

Camara filed the instant Petition for Writ of Habeas Corpus on August 31, 2006 ("Pet.")[Doc. 1] and a Memorandum in Support of the Petition for Habeas Corpus on December 1, 2006 ("Memo.")[Doc. 13]. David Nolan ("Nolan") filed the Respondent's Opposition to Petitioner's Memorandum in Support of Petition for Writ of Habeas Corpus on August 27, 2007 [Doc. 22].

### B. Facts

The following facts that underlie Camara's hostage taking conviction are drawn from the Respondent's Opposition, which cites the Supreme Judicial Court's summarized factual history. They appear to be undisputed.

On April 15, 2001, at the Bristol County House of Correction, where Camara was then incarcerated, a group of approximately 150 inmates, including Camara, gathered in the courtyard. Inmates started to yell, and Camara, along with some other inmates, undressed. Most of the gathered inmates refused to comply with the order to return to their cells. Resp. opp. at 5. Randall Spearin ("Spearin"), one of the inmates, urged his co-inmates not to disperse. Another inmate Richard McMullen ("McMullen") said "We have to take this now before they [the correction officers] get bigger." *Id.* at 6.

After a couple of minutes, inmates started to throw rocks and other objects towards correction officers. The correction officers withdrew to the rotunda. When police used non-lethal weapons to regain control over the courtyard, inmates ran for cover into various buildings, among others the HB unit (which housed inmates awaiting trial). *Id.* at 6. According to Camara's

memorandum, about 75 convicts entered the HB unit. Memo. at 4.

In the HB unit, the only correction officer present, Officer David Florent, barricaded himself in the bathroom. McMullen successfully led the effort to break into the bathroom and dragged Officer Florent out of the bathroom in order to use him as a bargaining chip. Officer Florent was injured. Resp. opp. at 6–7.

Other officers lined up outside the HB unit. Camara approached a window with a lightning rod picked from the roof and threatened that the inmates would kill Officer Florent if the officers tried to get into the HB unit. Asked by a correction officer if he was coming out of the HB unit, Camara shook his head no. McMullen negotiated with the officers over the radio. He demanded they let the inmates out of the HB unit. Either McMullen or Camara stated that once all the inmates were out, Officer Florent would be freed. *Id.* at 7.

Some of the inmates began surrendering, and eventually McMullen and Camara surrendered. Corrections officers retrieved Officer Florent. *Id.* Five days after the event, Camara admitted to investigators that he had used a rock to smash windows in the courtyard area because he was unhappy with the way he was treated at the House of Correction. *Id.* at 7–8.

In his memorandum, Camara describes testimonial evidence that McMullen was very active and was one of the leaders, while Camara was passive. Camara points out that Officer Florent, who knew Camara well, testified that he did not see or hear Camara at any point from the time he barricaded himself in the bathroom until he was retrieved. Also according to Camara's memorandum, Camara was seen through the window by a couple of Security Response Team members, and several guards testified that Camara never touched, tried to touch, or communicated with Officer Florent and never communicated with McMullen. Camara also points to Gonzaga's testimony, who did not know Camara. Gonzaga identified Camara and testified to seeing an object described as a shank in McMullen's hand. Memo. at 4–5.[1]

### C. Federal Jurisdiction

A petition for habeas corpus pursuant to 28 U.S.C. § 2254, can be adjudicated by the Supreme Court, a Justice thereof, a circuit judge, or a district judge, but a petitioner must first exhaust the remedies available in the courts of the state. In an order on June 13, 2007, this Court held that Camara had exhausted all available state court remedies for the second ground of his petition.[2] [Doc. 19].

Therefore, because Camara has made a petition to the proper court and has exhausted all available state court remedies, this Court may exercise jurisdiction over his petition for habeas corpus.

## II. ANALYSIS

### A. Ground One: erroneous jury instructions.

Camara raises several reasons why he believes the jury instruction was flawed.

First, Camara argues that the trial judge's instruction on hostage taking omitted essential elements of the offense and therefore created a substantial risk of a miscarriage of justice. He contends that the jury instruction did not indicate that he was a person charged with the offense

1. While Nolan does not dispute facts mentioned by Camara, the information presented by Camara has not been verified because the trial transcripts were unavailable.

2. Nolan does not dispute that Camara exhausted state remedies with regard to the first ground raised by his petition.

nor that Officer Florent was the person seized. *See* Pet. at 6; Memo. at 7, 9.

Second, Camara claims that because of the mistaken use of the disjunctive rather than the conjunctive in the instruction[3], the prosecution was relieved of the burden of proving that a person was seized or detained, and therefore the jury could have found Camara guilty for making a threat rather than for participating in the joint venture. Camara argues that the Commonwealth's inability to meets its burden is demonstrated by the fact that his other convictions were overturned due to insufficient evidence to sustain them on the joint venture theory. *See* Pet. at 6; Memo. at 8–9.

Third, according to Camara, the court was incorrect when it referred to the Federal Hostage Taking Act (18 U.S.C. § 1203) in order to define the offense with which Camara was charged, because this made the instruction confusing. *See* Pet. at 6; Memo. at 7.

Lastly, Camara points out the brevity of the instruction in the context of the severity of the offense and the complexity of the case, which involved several defendants and different theories supporting different charges. *See* Pet. at 6; Memo. at 8.

Under 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Habeas corpus relief is "limited to the consideration of federal constitutional claims" and is not "an additional layer of conventional appellate review." *Burks v. Dubois,* 55 F.3d 712, 715 (1st Cir.1995). Because "Federal courts are not forums in which to relitigate state trials," *Barefoot v. Estelle,* 463 U.S. 880, 887, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), the Supreme Court has established some limits to habeas corpus review. Even though a constitutional claim may exist, the federal habeas review is barred when a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In such a case, the bar is lifted only if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." *Id.*

In Massachusetts, issues not raised at trial are treated as waived. *Commonwealth v. Grace,* 376 Mass. 499, 500, 381 N.E.2d 139 (1978). Appellate review of waived issues is conducted solely pursuant to the discretionary standard of a substantial risk of a miscarriage of justice. *Commonwealth v. Freeman,* 352 Mass. 556, 563–564, 227 N.E.2d 3 (1967).

Camara did not object to the jury instruction at the trial. *Commonwealth v. Spearin,* 446 Mass. 599, 607, 846 N.E.2d 390 (2006). He raised the claim for the first time on the direct appeal, and the issue was reviewed by the Supreme Judicial Court under the substantial risk of a miscarriage of justice standard. *Id.*

The First Circuit explained in *Burks* that:

> A defendant's failure to object in a timely manner at his state criminal trial may constitute an adequate and independent state ground sufficient to trigger the bar rule so long as the state has a consis-

3. The trial judge defined hostage taking as "whoever [seizes] or detains *or* threatens to kill, to injure, or to continue to detain another person."

tently applied contemporaneous objection requirement and the state court has not waived it in the particular case by resting its decision on some other ground.

55 F.3d at 716. There is no dispute that the waiver rule is consistently applied in Massachusetts. Camara contends that, because the Supreme Judicial Court reviewed his jury instruction claim, the court waived Camara's procedural default. To support his argument, Camara cites *Ylst v. Nunnemaker,* 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Contrary to Camara's understanding, the Supreme Court in *Ylst* did not conclude that review at the appellate level of claims procedurally defaulted at trial operates as a waiver of such procedural default. In addition, the First Circuit has held repeatedly that engaging in a discretionary "miscarriage of justice" review does not represent waiver by a state appellate court. *See Manisy v. Maloney,* 283 F.Supp.2d 307, 312 (D.Mass. 2003)(Stearns, J.).

■ Thus, Camara defaulted on the jury instruction claim pursuant to an independent and adequate state procedural rule and his default was not waived by the Supreme Judicial Court.

■ Upon habeas corpus review under *Coleman,* the bar imposed on federal claims that were defaulted pursuant to an independent and adequate procedural rule will be lifted if: (1) petitioner can show cause and actual prejudice of his procedural default, or (2) a fundamental miscarriage of justice would result from failure to consider his claim. *See Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

Camara never addressed the cause of his default, and the Court has found no indication of cause. In any event, Camara is not able to meet the high standard for actual prejudice.

■ The "actual prejudice" standard requires petitioner to demonstrate "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Ortiz v. Dubois,* 19 F.3d 708, 714 (1994)(quoting *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). In *Prou v. United States,* 199 F.3d 37, 49 (1st Cir.1999), the First Circuit Court of Appeals, quoting *Strickler v. Greene,* 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), noted that "in order to show prejudice sufficient to overcome a procedural default, a habeas petitioner 'must convince us that there is reasonable probability that the result of the trial would have been different' absent the error."

■ Nolan is correct that none of the defects alleged by Camara in the jury instruction worked to Camara's actual disadvantage. First, contrary to Camara's claim that the jury instruction did not designate him as the person who the jury must find to have seized or detained the hostage and Officer Florent as the person seized or detained, the jury instruction made clear that Camara was charged with hostage taking and that Officer Florent was the person allegedly taken as a hostage. The trial judge presented the jury with an instruction that, taken as a whole, contained all the required elements of hostage taking.

Second, the inadvertent use of the disjunctive instead of conjunctive in the instruction did not involve any issues contested at trial (the fact that McMullen seized Officer Florent was undisputed), and therefore, as the Supreme Judicial Court held, the mistake was only a "slip of the tongue" and "did not create a substantial risk of a miscarriage of justice." *Spearin,* 446 Mass. at 609, 846 N.E.2d 390.

Third, the judge's reference to the Federal Hostage Taking Act (18 U.S.C. § 1203) was designed to provide to the jury a definition of "hostage taking" and did not confuse the jury as to the elements of the offense under Massachusetts General Laws chapter 127, section 38A, the offence with which Camara was charged.

Because the alleged errors did not work to Camara's actual disadvantage, he cannot successfully claim prejudice.

Camara never addresses the issue of his innocence in order to meet the miscarriage of justice standard. Since he is acting *pro se*, however, further consideration must be given to whether his conviction for hostage taking is a miscarriage of justice. Based on the evidence presented at trial, a reasonable jury could have found that Camara engaged in a joint venture with McMullen to hold Officer Florent hostage, i.e. he violated Mass. Gen. Laws ch. 127 § 38A. Camara made a threat to kill the seized officer, which is an element of the hostage taking offence, he was present at the place of the hostage taking and he did not cooperate with prison authorities. These facts were sufficient for the jury to conclude that Camara was involved in the joint venture and therefore no miscarriage of justice occurred.

Because Camara defaulted on his constitutional claim pursuant to an independent and adequate state procedural rule and is not able to show either cause for and prejudice from his procedural default or a fundamental miscarriage of justice that would result from the failure to consider his claim, Ground One of his habeas corpus petition is barred from federal review.

### B. Ground Two: exclusion of exculpatory evidence

In Ground Two of his petition and memorandum, Camara claims that his Sixth Amendment rights were violated when the Supreme Judicial Court affirmed the trial court's exclusion of evidence presented by Camara. Camara alleges that the trial judge erred when he refused to admit evidence of a disciplinary report from the Bristol County House of Correction. The report described a fight between Camara and his co-venturer McMullen, an incident that preceded the hostage taking by about ten weeks. The evidence was offered as relevant to show animosity between these two inmates and thus to undermine the joint venture theory. Memo. at 10. Camara argues also that the judge did not allow Camara's counsel "to question guards and ranking staff about their knowledge of fights or animosity between Camara and McMullen." Memo. at 11. On appeal, Camara raised the issue of exclusion of the allegedly exculpatory evidence. Resp. opp. at 3. The Supreme Judicial Court held that the judge properly excluded the evidence. *See Spearin*, 446 Mass. at 607, 846 N.E.2d 390. Camara claims that the decision of the Supreme Judicial Court was contrary to, or an unreasonable application of, clearly established Federal law, and thus the Court can grant Camara habeas corpus relief. Memo. at 11.

#### *(1) The exclusion was not contrary to clearly established federal law.*

*Williams v. Taylor*, 529 U.S. 362, 405–406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) describes two alternative ways to satisfy the "contrary to" standard: (a) "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court] cases" or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at the result different from [the Supreme Court] precedent." A state court decision that is "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to clearly established

federal law satisfies the "contrary to" clause. *Id.*

In the instant case, the Supreme Judicial Court concluded that the trial judge properly excluded the evidence pursuant to the discretion he had under *Commonwealth v. Freeman,* 430 Mass. 111, 116, 712 N.E.2d 1135 (1999) to exclude evidence that is too remote or speculative in the absence of supporting evidence. The court explained that "Camara made no offer of proof concerning the substance and details of the fight apart from the fact of the fight itself, and offered no evidence of any continued animosity between him and McMullen after the fight." *Spearin,* 446 Mass. at 607, 846 N.E.2d 390. As pointed out in the Memorandum and Order issued by this Court on June 13, 2007, at page 5, "Massachusetts cases that deal with the exclusion of a defendant's evidence treat the scope of the right as at least equivalent to the right guaranteed under Federal Constitution." "When ... there is a state case 'that explicitly says that the state adheres to a standard that is more favorable to the defendants than the federal standard ... we will presume the federal law adjudication to be subsumed within the state law adjudication.'" *Norton v. Spencer,* 351 F.3d 1, 5 (1st Cir.2003).

The Supreme Judicial Court's affirmation of the decision of the trial judge was not contrary to clearly established precedent of the Supreme Court, and habeas corpus relief cannot be granted on this ground.

*(2) The exclusion did not involve an unreasonable application of clearly established federal law.*

Clearly established federal law explicates the constitutional right to present a complete defense under the confrontation clause. U.S. Const. amend. VI. This right is not unlimited, and the court, in its discretion, may exclude proffered evidence that is allegedly exculpatory. "[W]ell established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina,* 547 U.S. 319, 326, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006).

Given this background, affirmation by the Supreme Judicial Court of the trial judge's exclusion was not an unreasonable application of the law that allows limits to be imposed on proffered evidence. Several grounds support the exclusion of Camara's evidence as too remote to raise reasonable doubt about the joint venture theory. The fight occurred two and one half months before the hostage taking, no other evidence of animosity between Camara and McMullen was presented and no evidence as to the substance and details of the fight was offered. The trial judge's decision to exclude Camara's evidence of the fight was thus not arbitrary or disproportionate, nor an unreasonable application of clearly established federal law.

Even if exclusion of the evidence violated Camara's Sixth Amendment rights, there was no "substantial and injurious effect." *Fry v. Pliler,* 551 U.S. 112, 127 S.Ct. 2321, 2328, 168 L.Ed.2d 16 (2007). The hearsay disciplinary report concerning the fight between Camara and McMullen months before their joint venture in hostage taking would not have affected the outcome in light of the following evidence: Camara and McMullen with some other inmates took control of the HB unit; McMullen seized and detained Officer Florent and Camara threatened to kill the hostage; and Camara did not surrender when he had a chance to do so. Camara is not entitled to habeas corpus relief on Ground Two.

## III. CONCLUSION

Neither in his jury instruction claim nor in his exclusion of evidence claim has Camara been able to establish that he is in custody in violation of the Federal constitution or laws. Therefore, his petition for habeas corpus relief must be, and hereby is, denied.

SO ORDERED.